**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

VOLODYMYR KVASHUK,

        Petitioner,

        v.

WARDEN, FSL JESUP,

        Respondent.

CIVIL ACTION NO.: 2:25-cv-22

## REPORT AND RECOMMENDATION

Petitioner Volodymyr Kvashuk ("Kvashuk"), who is currently incarcerated at the Federal Correctional Institution-Satellite Low in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss Kvashuk's Petition, and Kvashuk filed a Response. Docs. 6, 9. For the following reasons, I **RECOMMEND** the Court **DENY** Respondent's Motion to Dismiss.[1]

## BACKGROUND

Kvashuk was convicted in the District Court for the Western District of Washington of several financial crimes. Doc. 1 at 9. Kvashuk was sentenced to 84 months in prison. Kvashuk has a statutory release date of March 16, 2027, via good conduct release, and a projected release date of March 16, 2026, via FSA release. Kvashuk also has a home detention or residential reentry center ("RRC") eligibility date of September 16, 2026. Kvashuk is "eligible" for FSA status. Id.; Doc. 6-1 at 7.

---

[1] Kvashuk also filed a motion for summary judgment, which both parties have extensively briefed. Docs. 10, 14, 15, 17. I **DIRECT** the parties to provide any further documentation or argument in support of the summary judgment motion and the relative merits of Kvashuk's Petition within 21 days of this Report and Recommendation.

In his Petition, Kvashuk asserts that the District Court for the District of New Hampshire concluded that his FSA credits were to be calculated from the date of sentencing rather than from the date of his arrival at a designated Bureau of Prisons ("BOP") facility and ordered the BOP to recalculate Kvashuk's earned time credits.  Doc. 1 at 1.  Kvashuk states that the BOP confirmed that he had accrued enough earned time credits to qualify for RRC placement in March 2025.  Id. & at 5–8.  Kvashuk also states, despite this, the BOP has not transferred him to an RRC based on a January 30, 2025 BOP Central Office memorandum prohibiting RRC placement for inmates with immigration detainers (which he has).[2]  Id. at 1–2.

Respondent moves to dismiss Kvashuk's Petition, contending that Kvashuk did not exhaust his administrative remedies, which Kvashuk admits.  Respondent also contends that Kvashuk cannot designate his place of confinement and this Court lacks authority to order a transfer.  Doc. 6 at 2.

## DISCUSSION

**I.    Kvashuk Exhausted His Available Administrative Remedies on His FSA Claims**

Respondent asserts that Kvashuk has filed 18 administrative remedy requests while he has been housed at the Jesup facility and the most recent request was submitted in November 2023.  Id. at 3.  Respondent maintains that the BOP's decision to deny Kvashuk's transfer was made after the January 2025 Memorandum issued.  Id.  Thus, Respondent concludes that Kvashuk's November 2023 administrative remedy requests are not relevant to the claim he raises here and Kvashuk has not exhausted his administrative remedies.  Id. at 3, 4.  Respondent states

---

[2]    Kvashuk states the memorandum is from January 24, 2025, but it appears the memorandum is from January 30, 2025.  For ease of reference, the Court will call this memorandum the January 2025 Memorandum.

2

that Kvashuk's personal belief that pursuit of the administrative remedies process would be futile is not sufficient to excuse exhaustion requirements. Id. at 4.

Kvashuk recognizes that exhaustion is generally required but not if the pursuit of the administrative remedies process would be futile. Doc. 1 at 2. Kvashuk states the January 2025 Memorandum "precludes any prospect for relief, and the standard administrative process would impose an undue delay of 120 days or more . . . ." Id.

In response to the Motion to Dismiss, Kvashuk states that he was told a BOP memorandum precluded his RRC placement due to his immigration detainer and his case manager later confirmed a second memorandum (the January 2025 Memorandum) categorically barred all inmates with immigration detainers from RRC placement and stopped all pending referrals. Doc. 9 at 2. Kvashuk asserts that requiring exhaustion when the January 2025 Memorandum bound staff at all levels without individualized determinations left him with no possibility for administrative relief through the remedies process. Id. at 3.

A.    **Generally, a Petitioner Must Fully Exhaust All Available Administrative Remedies Before Filing a § 2241 Petition**

The Eleventh Circuit Court of Appeals has held a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "the exhaustion requirement [is] still a requirement and that courts cannot 'disregard a failure to exhaust . . . .'" Fleming, 631 F. App'x at 842 (citing Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015)).

Exhaustion of administrative remedies must occur first in the agency setting to allow "the agency [to] develop the necessary factual background upon which decisions should be based" and to give "the agency a chance to discover and correct its own errors." Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[3]

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91.  In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

The Eleventh Circuit has explained—though only in an unpublished opinion—that a § 2241 petitioner need only exhaust "available" administrative remedies. Blevins v. FCI Hazelton Warden, 819 F. App'x 853, 856 (11th Cir. 2020) (citing Ross v. Blake, 578 U.S. 632 (2016)).  As a result, a petitioner need not exhaust administrative remedies:

> (1) where despite what regulations or guidance materials may promise, the administrative process operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates, (2) where the administrative process is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it, and

---

[3]   Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted).  Thus, exhaustion requirements are applicable to habeas petitions.

(3) where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Id. (cleaned up); see also Parra-Orona v. Jenkins, No. 1:23-CV-2434, 2024 WL 6083897, at *2 (N.D. Ga. Jan. 16, 2024) (citing Blevins and evaluating the unavailability of administrative remedies in the § 2241 context), adopted by, 2024 WL 6083898 (N.D. Ga. Mar. 26, 2024); Ridling v. Yeager, No. 1:24-CV-01785, 2025 WL 1892707, at *3 (N.D. Ala. June 13, 2025) (same), adopted by, 2025 WL 1885636 (N.D. Ala. July 8, 2025).

Although a petitioner must ordinarily exhaust administrative remedies before filing a § 2241 petition, there are some circumstances where exhaustion may be excused.  In McCarthy v. Madigan, the Supreme Court recognized "three broad sets of circumstances" that may justify excusing a claimant from exhausting administrative remedies: (1) when "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; (2) when there is "some doubt as to whether the agency was empowered to grant effective relief"; and (3) when "the administrative body is shown to be biased or has otherwise predetermined the issue before it . . . ."  503 U.S. 140, 146–48 (1992) (internal quotation marks omitted), superseded by statute, 42 U.S.C. § 1997e(a).  The Eleventh Circuit has not spoken directly on whether exhaustion can be excused in the § 2241 context under the three McCarthy circumstances but, in an unpublished opinion, has suggested it can be.  See Shorter v. Warden, 803 F. App'x 332, 336 (11th Cir. 2020) (suggesting McCarthy should be applied to § 2241 petitions).  District courts in this Circuit have similarly applied McCarthy in the § 2241 context. See, e.g., Wilson v. Sawyer, No. 4:20-CV-00326, 2020 WL 7346550, at *2 (N.D. Fla. Nov. 13, 2020), adopted by, 2020 WL 7342656 (N.D. Fla. Dec. 14, 2020); Robelo-Galo v. Janson, No. 1:24-CV-00931, 2025 WL 2093409, at *1 (N.D. Ga. Feb. 24, 2025), adopted by, 2025 WL 2093406 (N.D. Ga. Mar. 14, 2025).

There is some uncertainty about whether there is a "futility" exception to the exhaustion requirement for § 2241 petitioners.  See Zapata-Molina v. Stone, No. CV 321-013, 2021 WL 2670725, at *2 (S.D. Ga. June 1, 2021) (noting it is unclear whether a futility exception exists in the § 2241 context), adopted by, 2021 WL 2673670 (S.D. Ga. June 29, 2021).  McCarthy itself suggests that the second and third circumstances identified in that case encompass futility. See McCarthy, 503 U.S. at 148 (noting that where an agency is not empowered to grant effective relief, seeking application for administrative relief may be "utterly futile" and that where a decisionmaker has already concluded rules were valid, seeking administrative remedies that would present same challenge to the same decisionmaker would be a "futile act").  Additionally, in Shorter, the Eleventh Circuit suggested that the petitioner's futility argument related to one of the three McCarthy circumstances.  803 F. App'x 336.  District courts applying McCarthy have also recognized that the McCarthy circumstances case likely encompass some futility exception. See, e.g., Jones v. Zenk, 495 F. Supp. 2d 1289, 1299–1300 (N.D. Ga. 2007) ("[T]he exceptions recognized in McCarthy, including the futility exception, apply to the exhaustion requirement in § 2241 cases."); Robelo-Galo, 2025 WL 2093409, at *2.

Thus, to the extent a petitioner demonstrates futility by showing the existence of one of the three circumstances described in McCarthy, a court may excuse the exhaustion requirement. There does not, however, appear to be any separate, independent futility exception, outside of the three McCarthy circumstances.[4]  Where a petitioner relies on futility, the petitioner has the

---

[4]    In McGee v. Warden, FDC Miami, the Eleventh Circuit expressly concluded that there is no futility exception to the exhaustion requirement for § 2241 petitions.  487 F. App'x 516, 518 (11th Cir. 2012).  However, that conclusion was based on a view that exhaustion was a jurisdictional requirement, which was later rejected.  Therefore, the conclusion about a futility requirement expressed in McGee is likely no longer correct.  See Straughter v. Warden, FCC Coleman-Low, 699 F. Supp. 3d 1304, 1308 (M.D. Fla. 2023) (explaining that the conclusion in McGee likely did not survive Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015)).

burden to demonstrate futility and "extraordinary circumstances." Jaimes v. United States, 168 F. App'x 356, 359 & n.4 (11th Cir. 2006). The Eleventh Circuit has additionally noted that "a petitioner need not exhaust his administrative remedies 'where the administrative remedy will not provide relief commensurate with the claim.'" Boz v. United States, 248 F.3d 1299, 1300 (11th Cir. 2001) (quoting Haitian Refugee Ctr., Inc. v. Nelson, 872 F.2d 1555, 1561 (11th Cir. 1989)), abrogation on other grounds recognized by Santiago-Lugo, 785 F.3d at 475 n.5.

### B.   Legal Framework for Evaluating a Motion to Dismiss for Failure to Exhaust Administrative Remedies

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because exhaustion "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

A respondent may raise an inmate-petitioner's failure to exhaust as an affirmative defense. See Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[respondents] bear the burden of proving that the [petitioner] failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert

---

Some courts have continued to state there is no futility exception to the exhaustion requirement for § 2241 petitioners. See, e.g., Martinez-Palmero v. Jenkins, No. 1:23-CV-2763, 2023 WL 12119160, at *2 (N.D. Ga. Nov. 17, 2023), adopted by, 2024 WL 6081629 (N.D. Ga. Feb. 27, 2024); Moore v. Colon, No. 20-22032, 2020 WL 5868179, at *4 (S.D. Fla. July 27, 2020), adopted by, 2020 WL 5848687 (S.D. Fla. Sept. 30, 2020). However, that view appears to be largely based on the language in McGee, which, after Santiago-Lupo, is likely no longer binding.

A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

In Turner, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies.[5] 541 F.3d at 1082. First, courts "look[] to the factual allegations in the [respondent's] motion to dismiss and those in the [petitioner's] response, and if they conflict, takes the [petitioner's] version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test assesses whether there is a genuine dispute of material fact regarding the [petitioner's] failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the [petitioner's] allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, [respondent has] shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at

---

[5]    Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner is no less applicable to a § 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition); Blevins v. FCI Hazelton Warden, 819 F. App'x at 856 (11th Cir. 2020) (applying Turner in the § 2241 context).

1209).  Once respondents have shown an administrative remedies procedure exists and the petitioner did not follow the procedure, the petitioner "bears the burden of proving the . . . procedure effectively was unavailable to him."  Nuckles v. Yeager, Case No. 1:25-cv-00125, 2025 WL 1490057, at *4 (N.D. Ala. May 22, 2025) (referencing Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020)).

Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings."  Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").  However, if the issue of exhaustion is "intertwined with the merits of a claim that falls under the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate.  Perttu v. Richards, 605 U.S. 460, 468 (2025).

C.    The BOP's Administrative Remedies Procedures

The BOP has established an administrative remedy procedure through which an inmate may seek review of an issue related to any aspect of his imprisonment.  28 C.F.R. § 542.10 et seq.  The Administrative Remedy Program applies to all inmates incarcerated in penal institutions the BOP operates.  Id. § 542.10(b).  Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff at the local facility ("BP-8").  Id. § 542.13(a).  If this does not resolve the matter, an inmate must submit a formal written administrative remedy request to the Warden ("BP-9") within 20 calendar days of the incident giving rise to the administrative remedy

9

request.  Id. § 542.14(a).  If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response.  Id. § 542.15(a).  If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11") to the BOP's Central Office, Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response.  Id.  Appeal to the BOP's Central Office is the final step in the BOP's administrative remedy process.  Id.

An inmate must complete all the steps in the administrative remedies process to have exhausted his administrative remedies.  A submission at any of these levels can be rejected, with notice to the inmate why the submission was rejected and, if correctable, to allow the inmate a reasonable time for re-submission.  Id. § 542.17(b).  Additionally, if an inmate does not receive a response within the allotted time for response at any level, including any extensions, the inmate is to consider the lack of a response to be a denial at that level.  Id. § 542.18.  The BOP uses a system known as "SENTRY to log and track inmate [remedies requests] as they progress through the administrative remedy process."  Jackson v. Gabby, Case No. 3:23-cv-4674, 2024 WL 1515703, at *4 (N.D. Fla. Feb. 28, 2024).

**D.      Analysis of Kvashuk's Efforts at Exhaustion**

Respondent contends that Kvashuk filed 18 administrative remedies requests, though none of these remedy requests relate to the January 2025 Memorandum and the BOP's decision to stop all RRC placement transfers to inmates with immigration detainers.  Doc. 6 at 4.  Kvashuk agrees that he did not exhaust his administrative remedies.  He states, however, that there was no possibility for administrative relief because of the directives contained in the January 2025 Memorandum.  Doc. 9 at 3.  Thus, the parties' assertions do not conflict: Kvashuk did not exhaust his administrative remedies prior to filing his Petition.

But Kvashuk is arguing that exhaustion of his administrative remedies should be excused because it would have been "futile" for him to pursue them.  The Court agrees.  Kvashuk has shown that there is doubt that the BOP "was empowered to grant effective relief," and that BOP was "biased or has otherwise predetermined the issue before it."  McCarthy, 503 U.S. at 146–48; see also id. at 148 (noting that where an agency is not empowered to grant effective relief, seeking application for administrative relief may be "utterly futile" and that where a decisionmaker has already concluded rules were valid, seeking administrative remedies that would present same challenge to the same decisionmaker would be a "futile act"); Shorter, 803 F. App'x at 336 (suggesting that the petitioner's futility argument related to one of the three McCarthy circumstances); see also Boz, 248 F.3d at 1300 (noting exhaustion not necessary if remedies will not provide relief corresponding to claim).  Kvashuk has shown that pursuit of the administrative remedies process would have been futile because BOP staff are bound by the January 2025 Memorandum.[6]  Thus, the Court should **DENY** this portion of Respondent's Motion to Dismiss.

---

[6]    Joshus Lowther, who represented Kvashuk during his criminal proceedings in the Western District of Washington, provided a declaration.  Mr. Lowther states that he contacted the BOP's Residential Reentry Management ("RRM") Office in Atlanta at Kvashuk's request and asked for a specific reason for Kvashuk's denial of RRC placement.  Doc. 9 at 11–12.  Mr. Lowther declares:

> During this conversation, a representative from the Atlanta RRM Office informed me explicitly that placements of inmates who have immigration detainers into halfway houses (RRC placements) had been suspended pursuant to a new Bureau of Prisons Central Office Memorandum issued on January 30, 2025.  The representative stated clearly and explicitly that all pending referrals for halfway house placements for inmates with immigration detainers were immediately ceased, and no new referrals for inmates with immigration detainers would be processed, pursuant to that memorandum.

Id. at 12.

II.    **Respondent Fails to Show That This Court Lacks Jurisdiction Under the APA to Review Kvashuk's Claim**

Kvashuk contends that the FSA provides that "eligible prisoners who successfully complete recidivism reduction programs shall earn time credits."  Doc. 1 at 2 (citing 18 U.S.C. § 3632(d)(4)(A)).  Kvashuk also contends that the FSA requires that these credits be applied toward pre-release custody or supervised release since the word "shall" is used in 18 U.S.C. § 3632(d)(4)(A).  Id.  In addition, "a prisoner is deemed 'eligible' for pre[-]release custody if he has earned sufficient [earned time credits]."  Id. (citing 18 U.S.C. § 3624(g)(1)).  Kvashuk maintains that the BOP is required to transfer a prisoner for RRC placement without regard to other factors, such as immigration detainers.  Id.

Respondent asserts that the BOP has the discretion to designate the place of a prisoner's incarceration.  Doc. 6 at 5.  Respondent also states that nothing in the FSA alters the BOP's authority to make placement determinations.  Id. at 6.  Respondent characterizes Kvashuk's claim as being a complaint about the location the BOP has decided to place Kvashuk, but Kvashuk fails to cite any authority allowing this Court to order his immediate RRC placement contrary to the BOP's decision.  Id. at 6–7.

Kvashuk responds that this Court has jurisdiction under § 2241 because he is challenging the execution of his sentence.  Doc. 9 at 6.  He also states that the FSA mandates that his earned credits be applied to pre-release custody or supervised release and the BOP's refusal to apply his credits and provide him with RRC placement is not a discretionary decision; rather, Kvashuk asserts the BOP's refusal to comply with the FSA violates §§ 3624(g) and 3632(d)(4)(C).  Id. & at 9.

Under the Administrative Procedure Act ("APA"), a petitioner may use habeas corpus to challenge a BOP action.  See 5 U.S.C. § 703.  However, in 18 U.S.C. § 3625, Congress specified

12

the provisions of the APA governing judicial review, §§ 701–06, were inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626. The Eleventh Circuit has explained § 3625 expressly precludes judicial review of agency adjudicative decisions but not rulemaking decisions, and courts generally lack jurisdiction because of § 3625 even in a § 2241 habeas action. Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent with the language of 18 U.S.C. § 3625."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions."). Where Congress precludes judicial review of an agency decision by statute, judicial review of that decision is limited to whether the agency acted outside its statutory limits or violated the Constitution. See Webster v. Doe, 486 U.S. 592, 597, 603 (1988); Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v. Keller, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011); Klatch v. Rathman, No. 1:13-CV-01452, 2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014); see also Rodriguez v. Johns, Civil Action No. 5:17-cv-134, 2018 WL 4102854, at *2–3 (S.D. Ga. July 26, 2018), adopted by, 2018 WL 4100695 (S.D. Ga. Aug. 28, 2018).

Section 3625 does not preclude judicial review of Kvashuk's claim. Kvashuk has precisely defined his claim repeatedly by stating that the BOP is not following the language of § 3624(g)(2), i.e., the BOP is not applying the mandatory "shall" of this statute (eligible prisoners "shall" be placed in prerelease custody); see also 18 U.S.C. § 3632(d)(4) (stating an eligible prisoner "shall" earn time credits). Accordingly, Kvashuk's claim is one that falls

outside of the BOP's discretionary acts and is, therefore, subject to judicial review.  Torres v. Jenkins, Civil Action No. 1:23-cv-2885, 2024 WL 6473642, at *3 (N.D. Ga. May 1, 2024) (recognizing § 3625 precludes judicial review of the BOP's discretionary determinations but noting the Eleventh Circuit has indicated a court can review a petitioner's claim that the BOP's interpretation of a statute is unreasonable and constitutional claims, despite the language of § 3625); see also Briones-Pereyra v. Warden, Case No. 1:23-cv-01718, 2024 WL 4141380, at *2 (E.D. Cal. Sept. 12, 2024) ("Although a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the [BOP] acted contrary to established federal law, violated the Constitution, or *exceeded its statutory authority* when it acted pursuant to 18 U.S.C. § 3621." (emphasis in original) (quoting Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016)); Woodley v. Warden, USP Leavenworth, Case No. 24-3053, 2024 WL 2260904, at *2–4 (D. Kan. May 15, 2024) (reviewing relative merits of petitioner's FSA claims under §§ 3624 and 3632 without mention of APA).

To be sure, Kvashuk's contention is more than a simple request that he be placed in a specific location.[7]  Kvashuk contends that the BOP has not followed the mandatory language of the FSA and, as a result, he has not been placed in pre-release custody, as § 3624(g) and § 3632 require, even though he is "eligible" for RRC placement.  See Woodley, 2024 WL 2260904, at *4 (noting, while the FSA requires transfer to pre-release custody for eligible prisoners, the BOP retains the discretion to decide the particular placement or facility); Williams v. Warden, FCI Berlin, 793 F. Supp. 3d 412, 418–19 (D.N.H. 2025) (citing Woodley favorably for the position

---

[7]     Respondent is correct that the Court does not have jurisdiction under the APA to review the specific location of a prisoner's incarceration.  However, Kvashuk's claim is not merely a claim to be placed in a specific location.

the BOP does not have discretion to delay or refuse transfer of an eligible prisoner to pre-release custody).

Because Respondent has not shown that the APA precludes judicial review of Kvashuk's claim, the Court should also **DENY** this portion of Respondent's Motion.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Respondent's Motion to Dismiss.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by

or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 26th day of February, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

16