**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

VOLODYMYR KVASHUK,

      Petitioner,

    v.

WARDEN, FSL JESUP,

      Respondent.

CIVIL ACTION NO.: 2:25-cv-22

## ORDER AND REPORT AND RECOMMENDATION

Petitioner Volodymyr Kvashuk ("Kvashuk"), who is currently incarcerated at the Federal Correctional Institution-Satellite Low in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss Kvashuk's Petition, and Kvashuk filed a Response. Docs. 6, 9. Kvashuk also filed a Motion for Summary Judgment. Doc. 10.

I issued a Report, recommending that the Court deny Respondent's Motion to Dismiss and ordered the parties to further brief Kvashuk's Motion for Summary Judgment. Doc. 20. However, since the issuance of that Report and Recommendation, I have entered a Report and Recommendation in Jones v. Ray, Case Number 2:25-cv-85, ECF No. 14, which dealt with a claim that is very similar to the one Kvashuk makes in this case. In the Jones Report and Recommendation, I concluded that claims like the ones presented by Jones and Kvashuk cannot be raised through a § 2241 petition. Therefore, I now **VACATE** the previous Report and Recommendation in this case and enter this Report and Recommendation in its stead. As discussed in more detail below, I **RECOMMEND** the Court **DISMISS without prejudice**

Kvashuk's Petition and **DENY as moot** Respondent's Motion to Dismiss and Kvashuk's Motion for Summary Judgment.  Docs. 1, 6, 10.[1]

## BACKGROUND

Kvashuk was convicted in the District Court for the Western District of Washington of several financial crimes.  Doc. 1 at 9.  Kvashuk was sentenced to 84 months in prison.  Kvashuk has a statutory release date of March 16, 2027, via good conduct release, and a projected release date of March 16, 2026, via FSA release.  Kvashuk also has a home detention or residential reentry center ("RRC") eligibility date of September 16, 2026.  Kvashuk is "eligible" for FSA status.  Id.; Doc. 6-1 at 7.

In his filings, Kvashuk asserts that the District Court for the District of New Hampshire concluded that his FSA credits were to be calculated from the date of sentencing (November 9, 2020), rather than from the date of his arrival at a designated Bureau of Prisons ("BOP") facility for service of his sentence (March 26, 2021), and ordered the BOP to recalculate Kvashuk's earned time credits.  Doc. 1 at 1.  Kvashuk states that the BOP confirmed that he had accrued enough earned time credits to qualify for RRC placement in March 2025.  Id. & at 5–8.  Kvashuk

---

[1]     A "district court can only dismiss an action on its own motion as long as the procedure employed is fair . . . .  To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond."  Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted).  A magistrate judge's report and recommendation provides such notice and opportunity to respond.  See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating a party has notice of a district court's intent to sua sponte grant summary judgment where a magistrate judge issues a report recommending the sua sponte granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting report and recommendation served as notice claims would be sua sponte dismissed).  This Report and Recommendation constitutes fair notice to Kvashuk that his suit is due to be dismissed.  As indicated below, Kvashuk will have the opportunity to present her objections to this finding, and the presiding district judge will review de novo properly submitted objections.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

also states, despite this, the BOP has not transferred him to an RRC. Id. at 1–2. It appears Kvashuk is challenging both the BOP's calculation of his credits and the BOP's refusal to transfer him to prerelease custody due to the presence of an immigration detainer.

Respondent moves to dismiss Kvashuk's Petition, contending that Kvashuk did not exhaust his administrative remedies, which Kvashuk admits. Respondent also contends that Kvashuk cannot designate his place of confinement and this Court lacks authority to order a transfer. Doc. 6 at 2.

## DISCUSSION

### I.    Kvashuk Does Not Set Forth a Proper Habeas Corpus Claim

At the outset, it is important to stress that Kvashuk does not seek early release from custody or even a recalculation of FSA credits that would lead to early release from custody. Under the FSA, an inmate who is sentenced to imprisonment and a term of supervised release—and Kvashuk qualifies—can earn a maximum of 365 days credit to reduce the custodial portion of the sentence. 18 U.S.C. § 3624(g)(3). There is no dispute that Kvashuk has already earned the 365-day maximum number of credits for reducing his custodial sentence. Doc. 1; Doc. 6-1 at 7. Indeed, Kvashuk states that if his Petition were granted, he would be transferred to an RRC in March 2025. Doc. 1 at 2. Thus, even if Kvashuk's Petition were granted in its entirety, Kvashuk would not be released from BOP custody any earlier.

Instead, Kvashuk's claim concerns credits toward transfer to "prerelease custody." See Doc. 9 at 10 (asking for transfer to RRC). The FSA allows inmates to earn credits and apply the credits "toward time in prerelease custody or supervised release."[2] 18 U.S.C. § 3632(d)(4)(C). Prerelease custody includes placement in an RRC (i.e., a halfway house) or in home

---

[2]    The portion of § 3632(d)(4)(C) concerning supervised release is not relevant here.

3

confinement.  Id. § 3624(g).  There is no numerical cap on the number of earned time credits that can be applied toward transfer to prerelease custody.  See Woolsey v. Warden, No. 2:25-cv-137, 2025 WL 2598794, at *6 (M.D. Ala. Sept. 8, 2025).

Kvashuk contends that the BOP has yet to transfer him to prerelease custody despite having earned credits toward that transfer.  In other words, if the Court granted Kvashuk's Petition in its entirety, Kvashuk would, at most, be eligible for placement in an RRC or in home confinement immediately or at an earlier date than the date the BOP has calculated.  Thus, the Court must first determine whether Kvashuk's claim—which would only result in an immediate or earlier transition to prerelease custody—is a valid habeas claim.

A.    Legal Authority

A petitioner can use the writ of habeas corpus to challenge "the fact or duration of . . . physical confinement itself" or the execution of the sentence itself.  Preiser v. Rodriguez, 411 U.S. 475, 498 (1973); Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1352 (11th Cir. 2008).  In contrast, when prisoners bring actions to challenge the circumstances of their confinement, these are civil actions, not habeas corpus actions.  See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006); Gorrell v. Hastings, 541 F. App'x 943, 945 (11th Cir. 2013); cf. see, e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994) (noting that if a prisoner's claim, if successful, could shorten or invalidate a term of imprisonment, the claim sounds in habeas).  "Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." Vaz v. Skinner, 634 F. App'x 778, 780 (11th Cir. 2015).

4

The Eleventh Circuit Court of Appeals has not provided any clear, binding guidance on whether a claim like Kvashuk's claim constitutes a valid habeas claim or a conditions-of-confinement claim.  See Woolsey, 2025 WL 2598794, at *8 (M.D. Ala. Sept. 8, 2025) ("It does not appear that the Eleventh Circuit has specifically addressed what statutory vehicle should be used by a federal prisoner to challenge where a federal sentence should be served for purposes of prerelease custody under the FSA."); id. (noting that "[d]etermining what constitutes a challenge to the execution of a sentence—when its duration remains unchanged—is where things get murky[,]" and citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. 2005)); Javat v. Warden, FCI Miami, No. 24-22645-CIV, 2025 WL 3617223, at *7 (S.D. Fla. Sept. 23, 2025), report and recommendation adopted, No. 24-22645-CV, 2025 WL 3610618 (S.D. Fla. Dec. 12, 2025) (noting that the distinction is "murky" or "hazy"); Boyd v. Warden, FCC Coleman-Low, Case No.: 5:25-cv-44, 2026 WL 113600, at *3 (M.D. Fla. Jan. 15, 2026); R. & R., Reyes v. Warden, FCI Jesup, Case No. 2:24-cv-107 (S.D. Ga. July 25, 2025), ECF No. 13, p. 2 ("This Court was unable to find a published Eleventh Circuit Court of Appeals case settling the question of whether a petitioner can successfully challenge his PSF designation via a § 2241 habeas petition.").

District courts in the Eleventh Circuit have recently addressed the issue but have reached different conclusions.  For example, in Woolsey v. Warden, the court considered a § 2241 petition from an inmate who alleged that the BOP had improperly denied applying earned time credits toward the inmate's time in prerelease custody.  2025 WL 2598794, at *1.  The Woolsey court acknowledged that the "weight of authority indicates that prerelease custody is part of the term of imprisonment," meaning that applying credits to an inmate's placement in prerelease custody would "not impact the duration of the imposed term of imprisonment."  Id. at *8.

5

Nonetheless, the Woolsey court stated that it had not identified "any on-point binding precedent supporting the argument that § 2241 does not confer jurisdiction for relief seeking placement in prerelease custody under the FSA."  Id.  The Woolsey court observed that § 2241 jurisdiction exists for challenges to the "execution" of sentence, which can include challenges to the place of imprisonment and manner and conditions of confinement.  Id. at *9.  The Woolsey court emphasized that confinement in a penal institution is "very different" from prerelease custody and that prerelease custody serves the important goal of "reintegrating an inmate into society." Id. (quoting Woodall, 432 F.3d at 243.  Ultimately, the Woolsey court determined that it had jurisdiction under § 2241 to adjudicate the petitioner's claim seeking placement in prerelease custody.

In Javat v. Warden, FCI Miami, the court considered a claim by an inmate that the BOP had unlawfully denied the inmate FSA credits that prevented the inmate from entering prerelease custody at an earlier date.[3]  2025 WL 3617223, at *1.  Unlike the Woolsey court, the Javat court concluded that it did not have jurisdiction under § 2241 to adjudicate the petitioner's claim seeking placement in prerelease custody.  The Javat court explained that, typically, a complaint by an inmate about where the inmate is detained (i.e., "a place-of-confinement claim") is not cognizable in a habeas proceeding, particularly because Congress has given the BOP wide discretion on where to house inmates.[4]  Id. at *6.  The Javat court concluded that claims like the

---

[3]    The petitioner in Javat also had an immigration detainer lodged against him, as does Kvashuk. 2025 WL 3617223, at *1.

[4]    Prerelease custody determinations are placement decisions that typically lie within the BOP's discretion.  See 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621."); see also 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.").  "The decision where to house inmates is at the core of prison administrators' expertise."  McKune v. Lile, 536 U.S. 24, 39 (2002).

6

petitioner's—i.e., those seeking earlier placement in prerelease custody under the FSA—are "more aptly described as conditions-of-confinement issues not cognizable in a habeas proceeding."  Id. at 8; see also Boyd v. Warden, FCC Coleman-Low, No. 5:25-CV-44, 2026 WL 113600, at *4 (M.D. Fla. Jan. 15, 2026) (concluding that petitioner's claim seeking earlier transfer to prerelease custody under the FSA "ultimately relate[s] to the conditions of his confinement, not the execution of his sentence, and [is] therefore not redressable through a habeas proceeding").  In support of its conclusion, the Javat court pointed to authority suggesting that an inmate has no liberty interest in transfer to home confinement and emphasized that the BOP retains significant discretion in determining an inmate's place of confinement.

In both Javat and Woolsey, the courts discussed persuasive authority from outside of the Eleventh Circuit, noting what appears to be a Circuit split.  The Fifth Circuit of Court of Appeals and district courts within the Eighth Circuit have concluded that there is no jurisdiction under § 2241 for claims seeking application of FSA credits to prerelease custody.  See, e.g., Maxwell v. Thomas, 133 F.4th 453, 454 (5th Cir. 2025); Reaves v. Garrett, No. 2:24-cv-177, 2025 WL 890147, at *2 (E.D. Ark. Mar. 21, 2025) (noting that prerelease custody "changes only the *place* where a sentence is served; it does not alter the fact or duration of imprisonment"), report and recommendation adopted, 2025 WL 1118580 (E.D. Ark. Apr. 15, 2025); Wessels v. Houden, Case No. 23-CV-1266, 2023 WL 7169154, at *1 (D. Minn. June 22, 2023) (A "legal action seeking transfer from one form of BOP custody to another (like a legal action seeking transfer to one BOP facility to another) is not a challenge to the fact or duration of confinement." (citing 18 U.S.C. § 3624(c) and collecting cases)).  The Fifth Circuit utilizes a bright-line rule: "if a favorable determination of the prisoner's claim would not automatically entitle him to accelerated release, then the proper vehicle is a civil rights suit."  Maxwell, 133 F.4th at 454

7

(concluding that claim seeking earlier transfer to prerelease custody under the FSA is cognizable under § 2241).  It appears that courts in the Fourth Circuit take a similar view.  See, e.g., Fiorentino v. Wolfe, No. 5:22-CV-304, 2023 WL 4114615, at *3 (N.D. W. Va. May 22, 2023), report and recommendation adopted, 2023 WL 4111390 (N.D. W. Va. June 21, 2023) (rejecting a claim for transfer to another facility under the FSA noting that the claim "one that would not fall within the scope of habeas corpus." (quoting Wilborn v. Mansukhani, 795 F. App'x 157, 164 (4th Cir. 2019))).

In contrast, courts in the First and Second Circuits have concluded that courts have jurisdiction under § 2241 to adjudicate claims seeking transfer to other forms of BOP custody (e.g., community confinement centers, halfway houses, and home confinement).[5]  See, e.g., Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015) (noting that inmates may utilize a § 2241petition  "to challenge placement (or lack thereof) in a community confinement center, or to contest one's imprisonment in a specific facility"); Williams v. Warden, FCI Berlin, 793 F. Supp. 3d 412, 422 (D.N.H. 2025) (concluding that under the law in the First Circuit, a claim for placement in prerelease custody under the FSA should be pursued in a § 2241petition); Paulino v. Flowers, No. 3:24-CV-1569, 2025 WL 297388, at *1 (D. Conn. Jan. 24, 2025) (concluding that § 2241 is the proper mechanism for seeking placement in prerelease custody under the FSA, citing Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006), but dismissing petition for failure to exhaust administrative remedies).  Those courts tend to take a broad view of the

---

[5]    The Javat and Woolsey courts stated that the Third Circuit Court of Appeals would likely allow these sorts of claims to proceed under § 2241 as well, citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. 2005).  But more recent district court decisions in the context of FSA prerelease claims do not necessarily support that view.  See, e.g., Watkins v. Warden of FCI-Lewisburg, No. 1:26-CV-00138, 2026 WL 192486, at *4 (M.D. Pa. Jan. 26, 2026) ("[P]etitions seeking transfer to pre-release custody based on the FSA that do not allege that the BOP's conduct is somehow inconsistent with a command or recommendation in his sentencing judgment fail [to satisfy the jurisdictional requirements for § 2241 petitions.]").

types of claims that can be pursued in a § 2241 petition.  See, e.g., United States v. DeLeon, 444 F.3d 41, 59 (1st Cir. 2006) ("If the conditions of incarceration raise Eighth Amendment concerns, habeas corpus is available.").

In Javat and Woolsey, the courts also discussed Eleventh Circuit cases that are not directly on point, but that those courts found to be informative on the issue.  The Javat court relied heavily on Sills v. FCI Talladega Warden, No. 22-12656, 2023 WL 1775725, at *3 (11th Cir. Feb. 6, 2023), and Touizier v. U.S. Att'y Gen., No. 21-10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021), to support its conclusion that habeas review is not available to enforce prerelease decisions under the FSA.

In Sills, the petitioner sought placement in home confinement under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).  2023 WL 1775725, at *1.  The Eleventh Circuit concluded that the district court properly dismissed the petition because the court "lacked the authority to order [petitioner's] placement in home confinement, and that the [petitioner] could not state a procedural-due-process claim because he lacked a constitutionally protected liberty interest in his place of confinement.  The court's analysis focused on whether the court had the authority under the CARES Act to order an inmate placed in home confinement and whether the petitioner had any protected liberty interest in home confinement under the CARES Act.  The court answered both questions in the negative.  In Touizier, the court dealt with a very similar claim and succinctly concluded that the CARES Act provided no authority for a court to order an inmate into home confinement.  2021 WL 3829618, at *2.  Notably, neither Sills nor Touizier addressed or resolved whether a claim seeking placement in home confinement (or a halfway house) is cognizable under § 2241.

9

The <u>Woolsey</u> court relied on <u>United States v. Saldana</u>, 273 F. App'x 845 (11th Cir. 2008), to support its conclusion that claims seeking placement in prerelease custody under the FSA are properly brought under § 2241.  In <u>Saldana</u>, the court considered motions by pro se inmates, seeking to vacate a separation order so that the petitioning inmates could be housed in the same prison.  The court concluded that the inmates were "challenging where they are confined" and, therefore, "the district court should have construed their motions as federal habeas petitions filed pursuant to 28 U.S.C. § 2241."  <u>Id.</u>  The court remanded the case and directed the district court to transfer the construed petitions to the respective district courts where each inmate was housed.  <u>Id.</u>

B.      Analysis

I have considered the thorough and studious discussions of this issue in <u>Woolsey</u> and <u>Javat</u>, as well as much of the persuasive authority discussed in those cases.  One thing is abundantly clear: the law is perfectly unclear about this particular issue.  The United States Supreme Court has not addressed the issue, nor has the Eleventh Circuit, and the Courts of Appeals outside of the Eleventh Circuit are divided.  Even district courts in the Eleventh Circuit have come to opposite conclusions, despite thorough and scholarly analysis.  Ultimately, I conclude that Kvashuk's claim—which, if granted, would merely result in his earlier transfer to prerelease custody under the FSA—challenges his conditions of his confinement, not the execution of his sentence, and is therefore not redressable through a habeas proceeding.[6]

---

[6]      I acknowledge that in the past I have taken a different view.  <u>See, e.g.</u>, <u>Cobb v. Warden, USP Atlanta</u>, No. 2:23-CV-8, 2026 WL 540283, at *2 (S.D. Ga. Feb. 26, 2026) ("To the extent Cobb seeks prerelease custody under the FSA, § 2241 is likely the appropriate jurisdictional vehicle for challenging denials of placement in pre-release custody under the FSA.").  However, I have considered the issue anew, and I now conclude that § 2241 is not the appropriate mechanism for asserting claims seeking placement in prerelease custody.

The Supreme Court's decision in Preiser v. Rodriguez provides a starting point for analyzing this issue.  411 U.S. 475, 484 (1973).  There, the Court explained that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  Id.  The Court made it clear that a prisoner challenging "the very fact or duration of his physical confinement" must pursue claims through habeas, not a civil rights action.  Id. at 499.  But that pronouncement does not resolve the issue before this Court—namely, whether a prisoner can use habeas to challenge something other than the fact or duration of his physical confinement, like conditions of confinement.  The Supreme Court left that question open, and it has not yet answered it. See Ziglar v. Abbasi, 582 U.S. 120, 144 (2017) ("We have left open the question whether [prisoners] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus." (citing Preiser).

The Eleventh Circuit has touched on the issue of the use of a § 2241 habeas petition to challenge placement in alternative forms of custody but has not provided a clear answer.  As noted above, in Sills,  2023 WL 1775725 , and Touizier,  2021 WL 3829618 , the court rejected habeas petitions seeking placement in home confinement under the CARES Act, strongly suggesting that such a petition lacks merit.  But, in those cases, the court appeared more focused on whether the statute at issue provided the courts with authority to provide the requested relief than whether such a claim was cognizable in habeas at all.

In some unpublished decisions, the Eleventh Circuit has indicated that claims challenging certain aspects of confinement (perhaps even "conditions" of confinement) can be challenged in a habeas petition.  As noted above, in Saldana, the court concluded that an inmate's challenge to the place of confinement (i.e., the specific prison) should have been construed as a habeas

petition under § 2241.  But the court provided almost no analysis there, and the habeas

conclusion was largely immaterial, given that the requests were filed in the wrong districts.

In Daker v. Warden—also an unpublished decision—the court explained that "habeas

corpus petitions under § 2254 and complaints under § 1983 . . . are mutually exclusive: if a claim

can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983

civil rights action."[7]  805 F. App'x 648, 650 (11th Cir. 2020).  The court acknowledged that the

Supreme Court in Preiser speculated that a prisoner might be able to use a habeas petition to

challenge "additional and unconstitutional restraints during lawful custody" but also noted that

the Supreme Court "never followed that speculation."  Id.  Ultimately, the court concluded that

the petitioner in that case could challenge his placement in administrative segregation in a habeas

petition, given that it went to the "fact or duration" of the petitioner's physical imprisonment.

However, the court rejected the petitioner's attempts to challenge other conditions of his

confinement in a habeas petition.

The Woolsey and Javat courts grappled with deciding if a petitioner can use a § 2241

petition to challenge some aspect of his confinement—specifically, placement in prerelease

custody under the FSA—when that challenge would not result in immediate or accelerated

release from custody.  In those cases, the courts considered the purpose of prerelease custody

(i.e., reintegration into society), the differences between prerelease custody and confinement in a

penal institution (e.g., the nature of the restraints on movement), whether the BOP had some (or

any) discretion in deciding whether to place an inmate in prerelease custody, and whether the

inmate had any protected liberty interest in placement in prerelease custody.  After weighing

---

[7]     Admittedly, the unique circumstances of § 2254 and § 1983 actions may make the court's statements in Daker less instructive.  Likewise, the unique claim in that case—a challenge to placement in administrative segregation—may render the decision inapplicable in this case.

those considerations and the various approaches taken by other courts, the <u>Woolsey</u> and <u>Javat</u> courts came to opposite conclusions.  The opposite results in those two cases highlight the problems with the "hazy" and "murky" distinction between when a prisoner can use a habeas petition to challenge conditions of confinement, but not seek early or immediate release, and when the prisoner cannot.

In my view, the inquiry should be clear and discrete: if a petitioner's claim, if granted, would result in immediate or accelerated release from confinement, then the proper vehicle is a habeas petition; otherwise, the proper vehicle is a civil rights suit.  This is consistent with the bright-line rule the Fifth Circuit uses.[8]  <u>Maxwell</u>, 133 F.4th at 454.  It is also consistent with the approach taken in the Eighth Circuit in cases like <u>Wessels</u>, 2023 WL 7169154, at *1  (A "legal action seeking transfer from one form of BOP custody to another (like a legal action seeking transfer to one BOP facility to another) is not a challenge to the fact or duration of confinement." (citing 18 U.S.C. § 3624(c) and collecting cases)); <u>see also</u> <u>Boyd</u>, 2026 WL 113600, at *4 ("If the Court were to grant Boyd his requested relief, he would not be released from custody sooner. Instead, he would simply serve the remainder of his term of imprisonment somewhere different—in home confinement or at an RRC, both of which are a form of prerelease custody.").

A bright-line rule has many benefits.  First and foremost, trial courts can readily determine the proper procedural mechanism for the claim at the outset of the suit.  The distinction is important because the nature of the suit will impact analysis of other issues, like the

---

[8]        In <u>Gwin v. Snow</u>, 870 F.2d 616, 625 (11th Cir. 1989), the Eleventh Circuit expressly rejected a "bright-line" test announced by the Fifth Circuit in <u>Serio v. Members of the La. State Board of Pardons</u>, 821 F.2d 1112 (5th Cir.1987), but that appears to be a different test.  In <u>Serio</u>, the Fifth Circuit adopted the following rule: "If a prisoner challenges a single hearing as constitutionally defective, he must first exhaust habeas remedies."  The Eleventh Circuit rejected that test, noting that it conflicted with <u>Preiser</u>, in that it did not focus solely on the relief requested to distinguish between habeas and civil rights claims. The bright-line rule discussed here, and the one I adopt, is consistent with that guidance from <u>Preiser</u>.

need for exhaustion of administrative remedies, the proper respondent or defendant in the case, and whether the petitioner-plaintiff has paid the appropriate filing.  A bright-line rule is also consistent with much of the authority dealing with the distinction between habeas and civil rights claims.  The Eleventh Circuit has explained that the Supreme Court has continued to "focus solely on the requested relief for distinguishing between habeas corpus and section 1983 claims" and has explained that prisoners who do not seek release from custody "do not come within the class of cases for which habeas corpus is the exclusive remedy."[9]  Gwin v. Snow, 870 F.2d 616, 623 (11th Cir. 1989).  A bright-line rule focuses solely on the requested relief and, therefore, supports much of the authority discussing the contours of jurisdiction under § 2241.  Finally, a bright-line test avoids drawing the courts into many of the thorny issues discussed in Javat and Woolsey, like whether placement in an RRC or in home confinement is meaningfully different from a penal institution, such that placement in one or the other supports proceeding under § 2241.

Applying a bright-line rule in this case, it is clear that Kvashuk cannot assert his challenge under § 2241.  Kvashuk asks the Court to order the BOP to recalculate his FSA credits so that he began earning credits earlier—meaning that Kvashuk earned more credits—so that he would be entitled to earlier transfer to prerelease custody.  Kvashuk also asks the Court to declare that the BOP's practice of preventing prerelease transfer for inmates with immigration detainers is unlawful.  Under either theory, Kvashuk does not seek early release from BOP custody; he merely seeks earlier transfer to a different type of BOP custody.  Prerelease custody is likely very different from custody in a penal institution, but it is still, categorically, BOP

---

[9]     The Eleventh Circuit has explained that habeas claims and civil rights claims are "mutually exclusive."  Daker, 805 F. App'x 648, 650 (11th Cir. 2020).  Because a claim is *either* a habeas claim *or* a civil rights claim, a bright-line test is crucial.

custody.  And Kvashuk does not ask for earlier release from BOP custody.  Thus, Kvashuk fails to state a valid habeas claim under a bright-line rule.[10]

For the reasons set forth above, I conclude that Kvashuk has not presented a valid habeas claim.  Therefore, the Court should **DISMISS without prejudice** Kvashuk's Petition and Motion for Summary Judgment and **DENY as moot** Respondent's Motion to Dismiss.

## II.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Kvashuk leave to appeal *in forma pauperis*.  Though Kvashuk has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[10]    Although I apply a bright-line rule here, I note that if I were to engage in the a more detailed analysis, like the one set forth in Javat, I would reach the same conclusion in that case.

Given the above analysis of Kvashuk's Petition and Respondent's Motion to Dismiss and Kvashuk's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **VACATE** the previous Report and Recommendation in this case and enter this Report and Recommendation in its stead.  I **RECOMMEND** the Court **DISMISS without prejudice** Kvashuk's Petition and **DENY as moot** Respondent's Motion to Dismiss and Kvashuk's Motion for Summary Judgment.  Docs. 1, 6, 10.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of

Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 10th day of March, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA